UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:14CR362 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| MARK S. FARMER, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is presently before the Court on the government's motion for a conflict of interest inquiry (Doc. No. 23). Defendant Mark Farmer filed a response (Doc. No. 26). The Court held a hearing on the motion on December 2, 2014. After entertaining oral argument, the Court continued the matter to January 7, 2015 and afforded the parties an opportunity to file supplemental briefs (Doc. No. 34 ["Government's Suppl."]; and Doc. No. 35 ["Defendant's Suppl."]). At the conclusion of the hearing on January 7, 2015, the Court announced that it was inclined to permit Attorney John Mitchell and the law firm of Thompson Hine to continue to represent Farmer in this matter, provided that Attorney Mitchell's former client signed a valid waiver of any potential conflict. The Court has since received such a valid written waiver from this former client and is satisfied that Farmer may continue to be represented by his chosen counsel. (Doc. No. 41 [Defendant's Ex. 4, Waiver of Client 1].). This opinion and order shall memorialize the Court's ruling.

I. BACKGROUND

Farmer was charged on October 9, 2014 by indictment with conspiracy to commit mail fraud, wire fraud and theft of government property, as well as twenty-two related substantive offenses. (Doc. No. 1 [Indictment].) The charges stemmed from a larger FBI investigation into public corruption in Cuyahoga County, Ohio. The indictment charges that Farmer and another individual, William Montague, conspired to exchange non-public information for money and property. Specifically, Farmer was alleged to have hired Montague, a public employee, to provide Farmer's company with insider information that would assist Farmer in securing government contracts for his company. Montague was charged in a separate but related case in 2013 and entered a guilty plea on February 20, 2014. He amended his plea guilty plea, pursuant to the terms of an amended plea agreement, on September 19, 2014. (*See* Case No. 1:13CR298.) Montague is currently awaiting sentencing.

Farmer has been represented by the same two attorneys with respect to the government's investigation since approximately September 2013—Mitchell, a partner with the law firm of Thompson Hine, and Matthew Ridings, an associate with the same firm. (Doc. No. 33 [transcript of December 2, 2014 hearing ("TR")] at 151.)[1] Farmer's trial is scheduled to begin April 10, 2015.

On November 12, 2014, the government filed the present motion for a conflict of interest inquiry. The impetus for the motion is Mr. Mitchell's prior representation of an individual the Court shall refer to as "Client 1." "Beginning in or

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

around May 2012," Mr. Mitchell began representing Client 1 in connection with the same government investigation. (Mot. at 88.) It is undisputed that Client 1 was not a target of the investigation and no charges were ever filed against her. On June 5, 2012, with Mr. Mitchell present, Client 1 participated in a proffer-protected interview with the FBI and the U.S. Attorney's Office. (*Id*. at 89.) During the proffer, Client 1 purportedly recounted the non-public information that Mr. Montague provided Client 1's business. It is undisputed that Client 1 did not mention Farmer at any time during her proffer, or otherwise provide any information that directly implicated Farmer in the conspiracy.

"In or around September 2013[,]" Mr. Mitchell notified the government that he also represented Farmer. (*Id*.) The government advised Mr. Mitchell that it believed that his representation of Farmer and Client 1 constituted a potential conflict of interest. Mr. Mitchell disagreed with the government's analysis, but arranged for another attorney—not associated with Thompson Hine—to represent Client 1. Prior to arranging for new counsel, Mr. Mitchell discussed with Client 1 his firm's proposed representation of Farmer. After conferring with her new counsel, Attorney Mark Marein, Client 1 consented to the successive representation.

The government maintains that it intends to call Client 1 as a witness at trial, and that Client 1 is expected to testify to the type of insider information Montague gave her company. It is the government's position that Mr. Mitchell's successive representation of Client 1 and Farmer creates a potential for conflict because Mr. Mitchell will be required to cross-examine his former client. According to the government, Mr. Mitchell's cross-examination might be limited by the fact that his ethical duty to Client 1

would require him to refrain from using confidential information—though helpful to Farmer—that he became privy to during Mitchell's prior representation of Client 1.

Farmer views the successive representation in a much different light. He insists that "[n]either Mr. Mitchell nor Thomson Hine has any conflict of interest in continuing to represent Mr. Farmer in this case[,]" and notes that "even if some conflict may have arguably existed, it is waivable and has been expressly consented to and waived." (Opp. at 111.) In support of his position, Farmer highlights the following facts: (1) Client 1 does not know Farmer, or Farmer's company, and the first time she ever heard of Farmer was when Mr. Mitchell approached her regarding his representation of Farmer; (2) Client 1 is unaware of any illegal acts that Farmer may have committed; (3) neither Mitchell nor Client 1 is aware of any information that Farmer could use to impeach Client 1; (4) neither Mitchell nor Client 1 is aware of any information about the FBI investigation that Client 1 shared with Mitchell that was not covered in the FBI proffer interview; and (5) both Client 1 and Farmer have executed signed waivers that explicitly waive any conflict associated with the successive representation. (Doc. No. 42 [Defendant's Ex. 1, Waiver of Mark Farmer]; Waiver of Client 1.)

At the hearing on December 2, 2014, the government reiterated its concern that the successive representation could give Farmer an ineffective assistance of counsel argument on appeal, noting that he could claim that his trial counsel was forced to abandon legitimate lines of cross-examination with Client 1 out of an incompatible duty owed to her. In fact, government's counsel suggested that Farmer's defense might have already been compromised by this prior relationship as Client 1's name was

conspicuously absent from a defense request for discovery relating to Montague's consulting clients.

In response, defense counsel suggested that the government's parade of horribles finds no basis in fact and is "just manufactured." (TR at 195.) As for defendant's discovery request, counsel stressed that the request sought *all* relevant information, and that the fact that certain names were not listed did not somehow change the scope of the request. (*Id*. at 92-93.)

Attorney Marein also addressed the Court at the December 2, 2014 hearing. He advised the Court that he discussed Mr. Mitchell's representation of Farmer with Client 1, and that she understood and accepted the risks associated with this successive representation. He reaffirmed that Client 1 has no knowledge of Farmer. (*Id*. at 161.) He further offered his opinion, based upon his discussions with Client 1 and his review of the information provided by Mr. Mitchell, that Mr. Mitchell could not be in possession of impeachable information that could be used on cross-examination of Client 1. (*Id*.) While he informed Client 1 that she had the right to say, "I do not want Mr. Mitchell continuing to represent this subsequent client," Attorney Marein maintained that Client 1 knowingly and voluntarily agreed to waive any conflicts.[2] (*Id*. at 162.)

Prior to the conclusion of the December 2, 2014 hearing and with Farmer's consent and agreement, the Court arranged for Attorney Thomas Conway to serve as independent counsel to advise Farmer on the government's motion. The hearing

---

[2] Marein indicated that he and Client 1 "talked through [the issue involving the proposed successive representation]. And in point of fact, she asked me as recent as two days ago, to come here and advise the Court that she respectfully and with knowledge and having had the benefit of dialog with me, waives any potential conflict[.]" (TR at 162.) Marein then added, "albeit I don't see any [conflict] as an officer of the court." (*Id*.)

was then continued until January 7, 2015. At this subsequent hearing, both Farmer and Attorney Conway represented that Conway thoroughly discussed with Farmer the various scenarios by which potential conflicts could manifest themselves at trial and that Farmer is fully aware—to the extent anyone can be—of the risks created by his decision to waive any potential conflicts relating to Mr. Mitchell's prior representation of Client 1. During the hearing, Attorney Conway also produced a written waiver that expressly waived any potential conflict that could arise from this successive representation. Farmer acknowledged he reviewed the waiver with Attorney Conway prior to signing it, and that he understood and consented to be bound by its terms. At this juncture, the Court has no reason to believe that the waivers signed by Farmer and Client 1 were anything short of knowing and voluntary.

## II.  Governing Law

A defendant in a criminal case has a constitutional right to the assistance of counsel. U.S. CONST. amend VI; *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The inquiry on a motion to disqualify defense counsel in a criminal case begins with this important constitutional right, and most often follows with the acknowledgement that included within the non-indigent's constitutional right to counsel is the right to counsel of one's choosing. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006); *Powell v. Alabama*, 287 U.S. 45, 53, 53 S Ct. 55, 77 L. Ed. 158 (1932). The right to select one's counsel, though not absolute, is so significant that it carries with it a presumption in favor of permitting chosen counsel to continue in his representation of the defendant. *United States v.*

*Swafford*, 512 F.3d 833, 839 (6th Cir. 2008); *see Wheat v. United States*, 486 U.S. 153, 154, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988).

      Like all defendants, however, Farmer also enjoys a constitutional right to effective assistance from his counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). The right to effective assistance of counsel, in turn, includes the right to representation by conflict-free counsel. *McNeal v. United State*s, 17 F. App'x 258, 26 (6th Cir. 2001) (citing *Strickland*, 466 U.S. at 688); *see Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).

      A serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." Restatement (Third) of the Law Governing Lawyers § 121 (2000). There are two types of conflicts that can arise in the context of an attorney's representation of his client: actual conflicts and potential conflicts. "An actual conflict of interest exists when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citations omitted). In contrast, "[a]n attorney has a potential conflict of interest if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *Id*. (emphasis in original, citation omitted).

      "Some conflicts mandate disqualification under the Sixth Amendment—for example, when counsel is unlicensed or has engaged in defendant's crimes." *Id*.

7

(citing *Bellamy v. Cogdell*, 974 F.2d 302, 306 (2d Cir. 1992) (en banc)); Restatement § 212(2) ("Notwithstanding the informed consent of each affected client or former client, a lawyer may not represent a client if: (a) the representation is prohibited by law; (b) one client will assert a claim against the other in the same litigation; or (c) in the circumstances, it is not reasonably likely that the lawyer will be able to provide adequate representation to one or more of the clients."); *see, e.g., United States v. McMichael*, No. 1:11CR180, 2011 WL 5547233 (N.D. Ohio Nov. 14, 2011) (finding disqualifying actual conflict of interest between defendant and attorney where attorney had entered a guilty plea to criminal charges brought by same United States Attorney's Office that was prosecuting defendant).

Where a lesser actual conflict or a potential conflict is involved, the Court may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel. *See Swafford*, 512 F.3d at 839. When a defendant wishes to waive a conflict, the Court must determine "whether the waiver is sufficient, and the defendant is aware of the conflict and the ramifications of the waiver." *United States v. Almany,* 621 F. Supp. 2d 561, 569 (E.D. Tenn. 2008) (citing *United States v. Osborn*, 402 F.3d 626, 631 (6th Cir. 2005)).

Even in the situation where a defendant is willing to waive a conflict, the Court is not obligated to accept the waiver. District courts are afforded "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. The determination of whether disqualification

due to a conflict is warranted is "left . . . to the informed judgment of the trial court," which can evaluate the facts and circumstances of the case. *Id*. at 164. The Sixth Circuit has declined to accept waivers upon a "showing of a serious potential for conflict." *See, e.g., United States v. Brock*, 501 F.3d 762, 772 (6th Cir. 2007) (quoting *Wheat*, 486 U.S. at 163-64) (district court properly rejected proffered waiver of actual conflict of trial counsel); *Serra v. Michigan Dep't of Corr*., 4 F.3d 1348 (6th Cir. 1993) (same).

In addition to the existence of possible conflicts, other important considerations guide the Court's analysis. The Court must safeguard the public's interest in the fair administration of justice, and must ensure that "criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *See Wheat*, 486 U.S. at 160.

The Court's task in balancing these important—and often competing—interests is daunting. As the Supreme Court observed:

> Unfortunately for all concerned, a district court must pass on the issue of whether [to disqualify counsel for a criminal defendant] not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interests are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Id.* at 162-63. Given the "murkiness" of the pretrial inquiry, the Court's determination "will be upheld unless 'arbitrary' or 'without adequate reasons.'" *Swafford*, 512 F.3d at 839 (quoting *United States v. Mays*, 69 F.3d 116, 121 (6th Cir. 1995)).

It is against this backdrop that the Court turns to the case at bar. These attorney conflict situations are inherently difficult, as weighty interest are always implicated. While the Court acknowledges the government's concern that defense

9

counsel's successive representation of a potential government witness and defendant creates the potential for conflict, the Court finds that the potential is slight and, therefore, must give way to defendant's Sixth Amendment right to the counsel of his choice.

### III. DISCUSSION

The government fails to identify an actual conflict that exists that precludes Mr. Mitchell's successive representation of Client 1 and Farmer. Instead, the government points to what it believes are a number of potential conflicts that could "burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. However, each "potential" conflict is more unlikely than the last.

The government's potential conflicts are all tied to the fact that Attorney Mitchell may have to cross-examine his former client at Farmer's trial. For example, the government suggests that Mr. Mitchell might have learned personal information about Client 1 that could be used to test her perception and memory. Without any factual support, the government invites the Court to:

> Consider if Client 1 disclosed to Mitchell that she was experiencing difficult issues in a personal relationship or in her business during the time of the offense. A non-conflicted attorney may cross-examine Client 1 about that relationship to challenge her memory and perception during that time. Perhaps the stress of that relationship caused Client 1 to drink excessively or otherwise self-medicate. Perhaps she had trouble sleeping or focusing.

(Government's Suppl. at 201.) In contrast to the government's conjecture, Attorney Mitchell has already represented that he is unaware of any information that he gleaned through his professional relationship with Client 1 that could be used to impeach her on cross-examination. Attorney Marien, after consultation with Client 1, confirmed that he, too, is unaware of any information Attorney Mitchell could use to impeach Client 1. As

10

such, the Court does not view the government's wild speculation regarding Client 1's perception and memory as troublesome.

Even more fanciful is the government's suggestion that Client 1 could be resentful over the fact that Attorney Mitchell advised her that he had "chosen another client over her." (*Id*. at 202.) According to the government, a non-conflicted attorney could explore this purported bias, and might introduce as evidence Attorney Mitchell's billing statements to show that Attorney Mitchell generated more fees representing Farmer than Client 1—or even call Attorney Mitchell as a witness—to demonstrate that Client 1's testimony was colored by her hurt feelings. However, even if the Court were willing to permit a mini-trial on defense counsel's client billing practices and firm revenues (something it is very unlikely to do), Client 1's express, written waiver of any potential conflict belies the government's theory of resentment.

Finally, the Court is not swayed by the government's concern that either Client 1 or Farmer could, at some later date, revoke their waiver. Of course, there is always the risk that an attorney's client may later try to revoke a waiver of conflict. However, having knowingly and voluntarily waived any potential conflict, Farmer would be hard-pressed on appeal to successfully argue that the successive representation should not have been permitted.[3] *See United States v. Collins*, 434 F. App'x 434, 441 (6th Cir. 2011) (rejecting the defendant's argument that the district court erred in accepting his

---

[3] Additionally, the government posits that, under Ohio Rule of Professional Conduct 1.7, events could transpire at trial that would invalidate the written waivers and require Client 1 and Farmer to make successive waivers. However, Rule 1.7 only applies to concurrent-client conflicts, not conflicts relating to successive representation, as is the case here. Ohio Prof. Cond. R. 1.7(a)(1) ("A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if . . . the representation of that client will be directly adverse to another *current* client.") (emphasis added).

11

conflict waiver, and noting that "a defendant 'may make a knowing, intelligent, and voluntary waiver of her right to conflict-free counsel,' and a defendant having done so 'may not now invoke the constitutional right that she chose to waive.'") (quoting *United States v. Straughter*, 950 F.2d 1223, 1234 (6th Cir. 1991)).

These purely "hypothetical" conflicts simply are not likely to burgeon into the type of conflict identified in *Moss*—the case heavily relied upon by the government—that could give rise to an ineffective assistance of counsel argument on appeal. *See Moss v. United States*, 323 F.3d 445, 463-4 (6th Cir. 2003) (noting that "if the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation") (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)); *United States v. Reese*, 699 F.2d 803, 804 (6th Cir. 1983) ("A defendant in a criminal case may not be denied his constitutional right to counsel of his choice on the basis of a totally unsupported 'belief' by the government that counsel has a conflict of interest."), *limited on other grounds as recognized in United States v. Mays*, 69 F.3d 116, 122 (6th Cir. 1995)). In *Moss*, a lawyer representing one of two co-defendants being tried together, had formerly represented both co-defendants jointly. After the indictment, one of the co-defendant's obtained separate counsel, but there was evidence that the former client continued to pay the attorney's fees for both defendants. *Id*. at 463-64. In finding an actual conflict that required close scrutiny under the standard set forth in *Cuyler v. Sullivan*, the Court relied on these facts, along with the fact that defendants had "collaborate[d] to mount a defense." *Id*. at 462.

The facts presented in this case stand in contrast to those before the Court in *Moss*. Client 1 and Farmer are not co-defendants under the same indictment where it

might be possible that the two could collaborate to mount a defense, or could even offer separate and possibly conflicting defenses. Additionally, unlike *Moss*, both Client 1 and Farmer have waived any possible conflict. Under these circumstances, the concerns expressed by the Supreme Court in *Moss* need not be shared by this Court in this case.

The present facts are also distinguishable from *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir. 1996), another case relied upon by the government. There, the Eleventh Circuit upheld the disqualification of defense counsel where counsel's previous representation of a co-defendant, who would testify against defendant, created an actual conflict because the co-defendant had confided certain personal information and was unwilling to waive the conflict. *McCutcheon*, 86 F.3d at 188-90. As previously noted, Client 1 is not a co-defendant and Mitchell is unaware of any confidential personal information that could be used to cross-examine Client 1. Moreover, Client 1 has expressly waived any possible conflict. *See McNeal,* 17 F. App'x at 263 (distinguishing *McCutcheon* on similar factual grounds).

Based upon the above, the Court concludes that there is insufficient evidence to deprive defendant of his constitutional right to counsel of his choice.

### IV. CONCLUSION

For the reasons set forth herein, as well as those set forth on the record in the hearings on December 2, 2014 and January 7, 2015, the government's motion—to the extent that it seeks the disqualification of defense counsel—is DENIED.

**IT IS SO ORDERED**.

Dated: January 14, 2015

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**