# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:14-CR-00362-SL |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT MARK S. FARMER'S** |
| MARK S. FARMER, | ) | **MOTION FOR JUDGMENT OF** |
| | ) | **ACQUITTAL OR, IN THE** |
| Defendant. | ) | **ALTERNATIVE, A NEW TRIAL** |

_____

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, Defendant Mark S.

Farmer hereby moves and renews his motion for judgment of acquittal and further moves, in the

alternative, for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.

A memorandum in support of this motion is attached.

Respectfully submitted,


Dated: September 2, 2015

/s/ John R. Mitchell
John R. Mitchell
john.mitchell@thompsonhine.com
Matthew D. Ridings
matt.ridings@thompsonhine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: 216.566.5500
Fax: 216.566.5800
*Attorneys for Defendant Mark S. Farmer*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................... 1

FACTS AND PROCEDURAL HISTORY ............................................................. 3

LAW AND ARGUMENT ...................................................................................... 5

I.   AS A MATTER OF LAW, MR. FARMER CANNOT BE GUILTY OF
     CONSPIRACY TO COMMIT HOBBS ACT EXTORTION OR AIDING AND
     ABETTING HOBBS ACT EXTORTION. ....................................................7

II.  THE EVIDENCE IS INSUFFICIENT FOR A RATIONAL JURY TO FIND
     BEYOND A REASONABLE DOUBT THAT MR. FARMER COMMITTED
     MAIL FRAUD OR WIRE FRAUD. .............................................................10

     A.   Mr. Farmer Made No Material Misrepresentations To, Or Concealments
          Of Material Facts From, The VA Or Other Potential VA Contractors.................11

     B.   The Government Did Not Present Sufficient Evidence To Convict Mr.
          Farmer Of Mail Or Wire Fraud...............................................................12

          1.   The Government Presented No Evidence That Mr. Montague Had
               A Duty To Disclose To The VA That He Was Providing
               Information Received From The VA To His Consulting Clients. .............12

          2.   The Government Did Not Prove That The Omissions Made By Mr.
               Montague Were "Material" For Purposes Of Mail Or Wire Fraud. ..........15

     C.   The Evidence Was Insufficient To Find Mr. Farmer Guilty Of Fraud.................16

III. THE GOVERNMENT PRESENTED INSUFFICIENT EVIDENCE THAT MR.
     FARMER AIDED AND ABETTED MR. MONTAGUE'S THEFT OF
     GOVERNMENT PROPERTY. .....................................................................20

     A.   Mr. Farmer Cannot Be Guilty Of Violating 18 U.S.C. § 641 Because, As
          A Matter Of Law, Intangible Information Cannot Be Stolen Or Converted. ........21

     B.   The Government Failed To Present Evidence Demonstrating That Mr.
          Farmer Intended To Deprive The Government Of The Use Or Benefit Of
          Any Documents Or Information. ...........................................................23

     C.   The Government Failed To Present Evidence Demonstrating That It
          Suffered An Actual Property Loss.........................................................24

IV.  THE EVIDENCE IS INSUFFICIENT TO PROVE THAT MR. FARMER
     JOINED ANY CONSPIRACY TO VIOLATE THE LAW. ...........................26

V.   IN THE ALTERNATIVE, MR. FARMER IS ENTITLED TO A NEW TRIAL
     BECAUSE THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT
     OF THE EVIDENCE....................................................................................27

CONCLUSION.......................................................................................................28

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Blount-Hill v. Bd. of Educ.*,
  195 Fed. App'x 482 (6th Cir. 2006) .......................................................22

*Chappell v. United States*,
  270 F.2d 274 (9th Cir. 1959) ..........................................................21, 22

*Chiarella v. United States*,
  445 U.S. 222 (1980).........................................................................13, 14

*Christopher v. SmithKline Beecham Corp.*,
  132 S. Ct. 2156 (2012).........................................................................21

*Gooch v. United States*,
  297 U.S. 124 (1936).............................................................................21

*Jackson v. Virginia*,
  443 U.S. 307 (1979).............................................................................5

*Morissette v. United States*,
  342 U.S. 246 (1952).............................................................................23

*Pinkerton v. United States*,
  328 U.S. 640 (1946).............................................................................9

*Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co.*,
  691 F.3d 821 (6th Cir. 2012) ..........................................................21, 22

*Scheidler v. Nat'l Org. for Women, Inc.*,
  537 U.S. 393 (2003)...........................................................................9, 23

*United States v. Autuori*,
  212 F.3d 105 (2d Cir. 2000)................................................................14

*United States v. Barger*,
  931 F.2d 359 (6th Cir. 1991) ..............................................................22

*United States v. Brock*,
  501 F.3d 762 (6th Cir. 2007) ...........................................7, 8, 9, 10, 22

*United States v. Budd*,
  496 F.3d 517 (6th Cir. 2007) ..............................................................9

*United States v. Campion*,
  560 F.2d 751 (6th Cir. 1977) ..............................................................6

*United States v. Caseslorente*,
   220 F.3d 727 (6th Cir. 2000) ...................................................24

*United States v. Cochran*,
   109 F.3d 660 (10th Cir. 1997) ...........................................14, 15

*United States v. Collins*,
   464 F.2d 1163 (9th Cir. 1972) ..............................................24

*United States v. Crossley*,
   224 F.3d 847 (6th Cir. 2000) ...............................................26

*United States v. Cunningham*,
   679 F.3d 355 (6th Cir. 2012) ...............................................10

*United States v. Delay*,
   440 F.2d 566 (7th Cir. 1971) ...................................................6

*United States v. Desantis*,
   134 F.3d 760 (6th Cir. 1998) ...........................................10, 13

*United States v. Dimora*,
   879 F. Supp. 2d 718 (N.D. Ohio 2012)..................................7

*United States v. Fisher*,
   648 F.3d 442 (6th Cir. 2011) ...................................................5

*United States v. Frost*,
   125 F.3d 346 (6th Cir. 1997) ...............................10, 12, 13, 15, 16, 18, 19

*United States v. Gen. Elec. Co.*,
   869 F. Supp. 1285 (S.D. Ohio 1994) ...................................6

*United States v. Gray*,
   521 F.3d 514 (6th Cir. 2008) ..............................................7, 8

*United States v. Grubbs*,
   506 F.3d 434 (6th Cir. 2007) ...................................................6

*United States v. Hughes*,
   505 F.3d 578 (6th Cir. 2007) ........................................26, 27, 28

*United States v. Hurt*,
   527 F.3d 1347 (D.C. Cir. 2008)...........................................23

*United States v. Jeter*,
   775 F.2d 670 (6th Cir. 1985) ...........................................21, 22

*United States v. Kissel*,
   218 U.S. 601 (1910)...............................................................9

*United States v. Klingler*,
 61 F.3d 1234 (6th Cir. 1995) ......................................................................24

*United States v. Leon*,
 534 F.2d 667 (6th Cir. 1976) .......................................................................6

*United States v. Lutz*,
 154 F.3d 581 (6th Cir. 1998) ......................................................................27

*United States v. Martin*,
 375 F.2d 956 (6th Cir. 1967) .......................................................................6

*United States v. Mittelstaedt*,
 31 F.3d 1208 (2d Cir. 1994)........................................................................15

*United States v. Saunders*,
 325 F.2d 840 (6th Cir. 1964) .......................................................................6

*United States v. Skeddle*,
 940 F. Supp. 1146 (N.D. Ohio 1996)..........................................................14

*United States v. Stephens-Miller*,
 582 Fed. App'x 626 (6th Cir. 2014) ...........................................................23

*United States v. Stull*,
 743 F.2d 439 (6th Cir. 1984) .................................................................16, 18

*United States v. Tobias*,
 836 F.2d 449 (9th Cir. 1988) ......................................................................21

*United States v. Truong Dinh Hung*,
 629 F.2d 908 (4th Cir. 1980) ................................................................21, 25

*United States v. Turner*,
 465 F.3d 667 (6th Cir. 2006) ......................................................................10

*Webb v. United States*,
 Case No. 1:04-cr-188, 2008 U.S. Dist. LEXIS 8862 (E.D. Tenn. Feb. 6, 2008)...................7, 8

*Windsor v. United States*,
 384 F.2d 535 (9th Cir. 1967) .................................................................16, 18

## Federal Statutes

17 U.S.C. § 105............................................................................................25

18 U.S.C. § 641 ..................................................................................2, 5, 20-26

18 U.S.C. § 793............................................................................................25

18 U.S.C. § 1951 ....................................................................................................................7

28 U.S.C. § 2255 ....................................................................................................................7

**Rules**

FED. R. CRIM. P. 29 ..................................................................................................5, 6, 27, 28

FED. R. CRIM. P. 33 ......................................................................................................27, 28

**Other Authorities**

Jessica Lutkenhaus, Note, *Prosecuting Leakers the Easy Way: 18 U.S.C. § 641*,
   114 COLUM. L. REV. 1167 (2014) ..............................................................................25

Michael E. Tigar, *The Right of Property and the Law of Theft*, 62 TEX. L. REV.
   1443 (1984) .............................................................................................................25, 26

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:14-CR-00362-SL |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **DEFENDANT MARK S. FARMER'S** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| MARK S. FARMER, | ) | **MOTION FOR JUDGMENT OF** |
| | ) | **ACQUITTAL OR, IN THE** |
| Defendant. | ) | **ALTERNATIVE, A NEW TRIAL** |

_____

## INTRODUCTION

The Government's prosecution of Defendant Mark S. Farmer rests on fundamentally flawed legal theories.  Mr. Farmer could not, as a matter of law, conspire to violate or aid and abet a violation of the Hobbs Act because, as the indictment is charged, the purported victim of the extortion scheme, Cannon Design, Inc., is also an alleged co-conspirator in the violation of the Hobbs Act.  Under settled law in the Sixth Circuit, co-conspirators cannot extort each other under the Hobbs Act because the statute requires proof that the extortionate payments originated "from another," *i.e.*, someone outside the conspiracy.  Because the indictment alleges – and the undisputed evidence presented at trial demonstrates – that the payments to Mr. Montague originated *inside* the conspiracy and never left it, Mr. Farmer cannot be liable under the Hobbs Act as a matter of law, and judgment of acquittal on Hobbs Act counts must be entered.

Mr. Farmer is entitled to acquittal on the other counts as well.  With respect to the supposed wire fraud scheme, which is alleged to have occurred prior to Mr. Montague accepting a position with the Dayton VA hospital in March, 2011, Mr. Montague had no duty to disclose his conflict of interest to the VA; thus, there was no fraud as a matter of law and Mr. Farmer

could not have conspired to commit a wire fraud or aided and abetted in its commission.

Further, the trial testimony from the Government's own cooperating witness, Mr. Montague, established that (1) there were never any affirmative misrepresentations made to the VA in order to obtain documents or information; (2) to the extent Mr. Montague made fraudulent misrepresentations or omissions, Mr. Farmer was completely unaware of them; (3) VA employees, including the Director and Deputy Director of the VA Office of Asset and Enterprise Management (OAEM), voluntarily gave Mr. Montague documents and information; (4) there was no fraud in Cannon Design's procurement of either the VA Illiana or VA West Los Angeles projects; (5) the Government never introduced any evidence of Mr. Montague's duty to disclose, if any; and (6) Mr. Farmer was unaware of Mr. Montague's failure to disclose the extent of his consulting activities to the VA.  Accordingly, there is insufficient evidence to maintain a conviction on the wire fraud charges, and judgment of acquittal should be entered.

Likewise, with respect to the mail fraud charges, Mr. Montague's trial testimony demonstrates that Mr. Farmer was unaware of any omissions or fraudulent statements allegedly made by Mr. Montague, the Government again failed to introduce evidence supporting any duty to disclose, and there is no evidence from which a rational jury could conclude that Mr. Farmer agreed to a scheme to defraud the VA, or aided and abetted such a scheme.  The evidence is insufficient to support a conviction on these counts.

Last, with respect to the charges against Mr. Farmer for a violation of 18 U.S.C. § 641, there was no evidence submitted at trial that would tend to demonstrate that Mr. Farmer intended to deprive the government of the use or benefit of the property allegedly stolen, which is a requirement in order to maintain a conviction under Section 641.  Without such evidence, a judgment of acquittal must be entered.  The evidence presented at trial is insufficient to support

the jury's guilty verdicts, and Mr. Farmer is entitled to judgment of acquittal or, in the alternative, a new trial.

## FACTS AND PROCEDURAL HISTORY

The indictment against Mr. Farmer initially charged 23 counts[1] encompassing five crimes: (1) conspiracy to commit mail fraud, wire fraud, theft of government property, and Hobbs Act extortion; (2) wire fraud; (3) mail fraud; (4) aiding and abetting theft of government property; and (5) aiding and abetting a Hobbs Act extortion.  (Doc. 1.)  Along with Mr. Farmer, the indictment names Mr. Montague, Cannon Design, and others known and unknown to the grand jury, as co-conspirators and co-participants in a scheme to defraud the VA and potential VA contractors.  (*Id.* ¶¶ 21, 43, 70.)  The indictment further alleges that Mr. Farmer and Cannon Design aided and abetted Mr. Montague's theft of government property (*id.* ¶¶ 63, 86, 88), and that Mr. Farmer aided and abetted Mr. Montague's extortion of Cannon Design (*id.* ¶ 68).

The basic factual allegations underlying the Government's case are that Mr. Montague started a consulting business after he retired from his position as Director of the Cleveland VA Medical Center in February 2010.  (Doc. 1, ¶¶ 2, 4.)  Mr. Montague drew on his experience as a long-time VA employee to help his consulting clients navigate their dealings with the VA contracting process.  About a year after his retirement from Cleveland, in March 2011, Mr. Montague was asked to return to the VA as Director of the Dayton VA Medical Center, and he accepted the temporary position.  (*Id.* ¶2.)  However, he insisted that he wanted to continue operating his consulting business while working at Dayton, and the VA, including Mr. Montague's boss and his boss's boss, agreed to let him do so. (Doc. 99, PageID 2548:1-16.) Nonetheless, the Government asserts that Mr. Montague, through his consulting business both

---

[1] The government later dismissed seven mail fraud counts against Mr. Farmer, which corresponded to the period during which Mr. Montague did not work for the Dayton VA.  (Doc. 82.)

before and during his stint at Dayton, fraudulently obtained non-public documents and information from the VA and provided them to his consulting clients, including Mr. Farmer and Cannon Design, with their encouragement and assistance.

A jury trial commenced August 10, 2015.  The Court heard testimony from several witnesses, including Mr. Montague, the Government's cooperating witness.  Mr. Montague testified about his relationship with Mr. Farmer and the crimes to which he pleaded guilty.[2]  He explained how he obtained documents and information from the VA and provided them to his consulting clients.  Mr. Montague testified that he went to the VA central office in Washington, D.C. about once a month and spoke to VA employees, including James Sullivan, the Director of OAEM, Edward Bradley, the Deputy Director of OAEM, and others. (Doc. 99, PageID 2549:1-5.)

Mr. Montague testified that he asked for information from these individuals, including Mr. Sullivan and Mr. Bradley, and they voluntarily gave information and documents to him. (Doc. 99, PageID 2550:23-2551:9.)  Mr. Montague testified that Mr. Sullivan never asked questions about why Mr. Montague wanted the information, and that Mr. Sullivan never instructed Mr. Montague that Mr. Montague was not permitted to share the documents with others. (Doc. 99, PageID 2549:19-2552:3.)  Sometimes, Mr. Montague did not even ask for the documents he was given.  (Doc. 99, PageID 2550:20-21.)  On some occasions, VA employees

---

[2] Mr. Montague was charged on November 6, 2013 in a 65-count indictment.  Of those 65 counts, 16 pertained to his dealings with Mr. Farmer and Cannon Design. Mr. Montague agreed to plead guilty to 64 of 65 counts, including all 16 involving Mr. Farmer and Cannon Design, and cooperate with the Government in exchange for sentencing considerations and the Government's promise not to pursue other charges against him.  Pursuant to the superseding plea agreement with Mr. Montague, his stipulated guideline calculation, prior to adjustments for acceptance of responsibility or substantial assistance, was 28, using a loss figure of more than $30,000 but less than $70,000 for the schemes alleged relating to Cannon Design.  Case No. 13-cr-00298, Doc. 66, at ¶17.

"put a gate up" and refused to provide Mr. Montague certain documents or information. (Doc. 99, PageID 2561:4-18, 2562:20-2563:3; Doc. 102, PageID 2583:4-5.)

The Government presented no evidence of any affirmative misrepresentations made by Mr. Montague to anyone at the VA in order to obtain documents and information. In fact, Mr. Montague testified only that he "omitted any explanation of why [he] needed" the documents and information and "was not honest by means of omission." (Doc. 99, PageID 2411:24, 2423:8; PageID 2488:11-15.)

The Government rested its case on August 14, 2015. The defense moved for judgment of acquittal at the close of the Government's case. The Court denied Mr. Farmer's motion as to the theft of government property charges under 18 U.S.C. § 641 but reserved decision as to the other charges. The defense rested on August 17, 2015 and renewed its motion for judgment of acquittal. Again, the Court denied the motion as to the theft of government property charges under 18 U.S.C. § 641 but reserved decision as to the other charges. The Court charged the jury on August 17, and the jury retired to deliberate that day. On August 19, 2015, the jury returned guilty verdicts on 14 of the 16 remaining counts. The jury found Mr. Farmer not guilty on two counts (Counts 4 and 23) of theft of government property.

## LAW AND ARGUMENT

Upon motion by the defendant the close of the Government's case, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). In deciding a motion for judgment of acquittal, the court must determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011). The Court must view the record as a

-5-

whole to determine if there is substantial evidence in the record upon which the jury could rely in finding the defendant guilty beyond a reasonable doubt. *United States v. Grubbs*, 506 F.3d 434, 438-39 (6th Cir. 2007). Substantial evidence "means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* at 439 (quoting *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967)).

"Where the evidence as to an element of a crime is equally consistent with a theory of innocence as with a theory of guilt, that evidence necessarily fails to establish guilt beyond a reasonable doubt." *United States v. Leon*, 534 F.2d 667, 677 (6th Cir. 1976) (quoting *United States v. Delay*, 440 F.2d 566, 568 (7th Cir. 1971)). Put another way, the Court must grant a Rule 29 motion "where the evidence 'at most establishes no more than a choice of reasonable probabilities' or inferences, one criminal and the other innocent." *Id.* (quoting *United States v. Saunders*, 325 F.2d 840, 843 (6th Cir. 1964)); *see United States v. Campion*, 560 F.2d 751, 754 (6th Cir. 1977) ("where the jury is called upon to choose between 'reasonable probabilities' of equal weight, one innocent and the other criminal, a conviction cannot stand"). This standard "is consistent with the principles that only *reasonable* inferences may be drawn in the prosecution's favor and that the evidence, viewed in the light most favorable to the prosecution, must support a finding of guilt *beyond a reasonable doubt*." *United States v. Gen. Elec. Co.*, 869 F. Supp. 1285, 1290 (S.D. Ohio 1994) (citations omitted and emphasis in original). Here, the evidence the Government presented is insufficient for a rational jury to find Mr. Farmer guilty beyond a reasonable doubt.

I.    **AS A MATTER OF LAW, MR. FARMER CANNOT BE GUILTY OF CONSPIRACY TO COMMIT HOBBS ACT EXTORTION OR AIDING AND ABETTING HOBBS ACT EXTORTION.**

Count 1 of the indictment charges Mr. Farmer with conspiracy to violate the Hobbs Act, along with Mr. Montague and Cannon Design.  (Doc. 1, ¶ 21.)  Count 5 charges Mr. Farmer with aiding and abetting Mr. Montague's extortion of Cannon Design in violation of the Hobbs Act. (*Id.*, ¶ 68.)  In other words, the Government alleges that (1) Cannon Design conspired with Mr. Montague and Mr. Farmer to extort itself, and (2) Mr. Farmer aided and abetted in the commission of that offense.

Hobbs Act extortion "means the obtaining of property from another, with his consent, . . . under color of official right." 18 U.S.C. § 1951(b)(2).  The language in the statute that requires the property to be obtained "from another" is not mere surplusage.  Instead, the Sixth Circuit has repeatedly held that the Hobbs Act requires "an agreement to obtain 'property from *another*,' which is to say, formed an agreement to obtain property from someone outside the conspiracy." *United States v. Brock*, 501 F.3d 762, 767 (6th Cir. 2007) (emphasis in original).  The Sixth Circuit expressly reaffirmed *Brock* a year later in *United States v. Gray*, reversing a substantive Hobbs Act conviction and holding once again that the statutory phrase "from another" means "an unrelated entity *outside of the conspiracy*." 521 F.3d 514, 541 (6th Cir. 2008) (emphasis added).

District courts in the Sixth Circuit have applied the *Brock* court's interpretation of the phrase "from another" as well.  *See United States v. Dimora*, 879 F. Supp. 2d 718, 727 (N.D. Ohio 2012) (Lioi, J.) (granting motion for judgment of acquittal on Hobbs Act conspiracy count because the extorted company was "not an entity 'outside the conspiracy' for purposes of *Brock*"); *Webb v. United States*, Case No. 1:04-cr-188, 2008 U.S. Dist. LEXIS 8862, at *9 (E.D. Tenn. Feb. 6, 2008) (granting motion under 28 U.S.C. § 2255 to vacate conviction for aiding and abetting Hobbs Act extortion because the defendant did not "extort property from an unrelated

entity outside of the conspiracy").  Thus, the law in this circuit is clear:  "from another" means an entity outside the conspiracy.

In this case, the indictment alleges, and the government submitted evidence at trial, that the supposedly extortionate payments were made by Cannon Design, an alleged conspirator to the charged violation of the Hobbs Act.  (Doc. 1, at ¶21.)  Exactly as in *Brock*, "these three people" – Mr. Montague, Mr. Farmer, and Cannon Design – "did not agree, and could not have agreed, to obtain property from 'another' when no other person was involved—when the property, so far as the record shows, went from one coconspirator . . . to another."  *Brock*, 501 F.3d at 767; *see also Gray*, 521 F.3d at 535-40 (affirming Hobbs Act convictions where payments were funneled from clients outside the conspiracy but reversing Hobbs Act convictions where payments ran from one co-conspirator to another); *Webb*, 2008 U.S. Dist. LEXIS 8862, at *8 (dismissing claim of aiding and abetting a Hobbs Act violation and explaining that, under *Brock*, the "from another" requirement in the Hobbs Act "necessarily excludes the conspirators' own property or their own consent").

The only evidence presented by the Government was that payments were made from one co-conspirator (Cannon Design) to another (Mr. Montague).  (Doc. 99, PageID 2494:14-16, 2495:21; Doc. 101 [Stipulations of Fact].)  This undisputed evidence, as well as the allegations in the indictment, demonstrates that the purportedly extortionate payments originated inside the conspiracy and never left it.  *See Brock*, 501 F.3d at 767.  Thus, as a matter of law, Mr. Farmer cannot be guilty of conspiracy to violate the Hobbs Act or aiding and abetting a Hobbs Act violation, because a Hobbs Act violation cannot occur when the payments are made entirely inside the conspiracy.  Simply, there is no Hobbs Act violation, so there can be no aiding and abetting a violation.

The law governing co-conspirator liability buttresses this conclusion. Conspiracy law dictates that "the act of one conspirator" is "attributable to the others for the purpose of holding them responsible for the substantive offense." *Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *see United States v. Budd*, 496 F.3d 517, 527 (6th Cir. 2007) (citing *Pinkerton* for the proposition that "a defendant is liable for a co-conspirator's crimes if they are foreseeably committed in furtherance of the conspiracy"). In other words, the act of one conspirator is the act of all conspirators. *See Pinkerton*, 328 U.S. at 647; *United States v. Kissel*, 218 U.S. 601, 608 (1910) (Holmes, J.) ("A conspiracy is a partnership in criminal purposes," and "an overt act of one partner may be the act of all"). Under the theory charged in the indictment and presented at trial, Cannon Design is a conspirator and therefore liable for the acts of Mr. Farmer and Mr. Montague under *Pinkerton*. But if Cannon Design is liable for the actions of Mr. Farmer and Mr. Montague, it is liable for extorting itself under the Hobbs Act, which, as *Brock* and *Gray* make clear, it cannot do. In simpler terms, Cannon Design cannot be a co-conspirator and a victim, but this is precisely what has been charged and alleged by the Government. The conclusion drawn by the Sixth Circuit in *Brock* and *Gray* – that co-conspirators cannot extort each other under the Hobbs Act – stems from the logical application of long-held conspiracy law.

Moreover, in light of *Brock* and *Gray* and the law governing co-conspirator liability, the rule of lenity weighs in favor of judgment of acquittal on the Hobbs Act counts. "'When there are two rational readings of a criminal statute, one harsher than the other,' the rule of lenity tells us that 'we are to choose the harsher only when Congress has spoken in clear and definite language.'" *Brock*, 501 F.3d at 768 (quoting *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003)). At a minimum, "the text of the statute does not unambiguously support the government's theory of prosecution—because . . . the law says that the conspiracy must extort 'property from another' and do so 'with his consent,' neither of which applies naturally to the

-9-

conspirators' own property or to their own consent." *Brock*, 501 F.3d at 768.  Accordingly, the rule of lenity weighs against adoption of the harsher interpretation of the Hobbs Act advanced by the Government and the Court must enter a judgment of acquittal on (1) Count 1 insofar as it pertains to the Hobbs Act, and (2) Count 5 in its entirety.

## II.      THE EVIDENCE IS INSUFFICIENT FOR A RATIONAL JURY TO FIND BEYOND A REASONABLE DOUBT THAT MR. FARMER COMMITTED MAIL FRAUD OR WIRE FRAUD.

The indictment alleges that Mr. Farmer and Mr. Montague committed mail and wire fraud when they devised a scheme "to defraud the United States Department of Veterans Affairs and other potential VA contractors and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises."  (Doc. 1, ¶¶ 43, 70.)

Mail fraud and wire fraud require proof that the defendant (1) knowingly devised or willfully participated in a scheme to defraud and (2) acted with the specific intent to deprive a victim of money or property.  *See United States v. Cunningham*, 679 F.3d 355, 370 (6th Cir. 2012) (wire fraud); *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006) (mail fraud).  A "scheme to defraud" must entail "intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997) (citations omitted); *see United States v. Desantis*, 134 F.3d 760, 764, 770 (6th Cir. 1998) (intent to defraud "means not only that a defendant must knowingly make a material misrepresentation or knowingly omit a material fact, but also that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission").

-10-

Mr. Farmer is entitled to judgment of acquittal on all fraud counts because the Government has failed to present sufficient evidence upon which a rational jury could rely in finding either element beyond a reasonable doubt.

### A.     Mr. Farmer Made No Material Misrepresentations To, Or Concealments Of Material Facts From, The VA Or Other Potential VA Contractors.

The indictment alleges that Mr. Farmer, along with Mr. Montague and Cannon Design, defrauded "the United States Department of Veterans Affairs and other potential VA contractors." (Doc. 1, ¶¶ 43, 70.)  The indictment alleges only that Mr. Montague – not Mr. Farmer – made fraudulent statements. (*Id.* ¶¶ 32, 49, 76 ("Montague gave false and misleading information to VA employees about Montague's reasons for requesting VA records and information."), 50, 77 ("Montague concealed from VA employees from whom Montague requested VA records and information that Montague was forwarding it to FARMER and Business 75.")).  There was no evidence presented at trial that Mr. Farmer made any material misrepresentation to, or concealed any material fact from, the VA or other potential VA contractors.  In fact, the Government presented no evidence that Mr. Farmer ever communicated with any VA employee (except Mr. Montague) or other potential VA contractor.  Because Mr. Farmer did not personally make any fraudulent misrepresentations or omissions to the VA or potential VA contractors to induce them to part with property or forego some legal right, he could be guilty of mail fraud and wire fraud *only* based on Mr. Montague's fraudulent representations or omissions.

**B.    The Government Did Not Present Sufficient Evidence To Convict Mr. Farmer Of Mail Or Wire Fraud.**

*1.    The Government Presented No Evidence That Mr. Montague Had A Duty To Disclose To The VA That He Was Providing Information Received From The VA To His Consulting Clients.*

The Government's theory of the fraud rests on Mr. Montague's failure to disclose that he was providing information to his consulting clients.[3]  The Government has argued that Mr. Montague also made affirmative misrepresentations to the VA's counsel in connection with obtaining ethics opinions; particularly, it points to Mr. Montague's disclosures to Ms. Szybala in connection with her October 1, 2010 opinion letter (Gov't Ex. 203) and to Mr. Gurland in connection with his draft ethics opinion dated April 13, 2011 (Gov't Ex. 204).  These claimed misrepresentations, however, were not related to the alleged scheme to defraud; that is, the plan to obtain documents and information to provide to Mr. Montague's consulting clients.  As the *Frost* court explained, the claimed misrepresentations to the VA ethics officers were a mere "fortuity."  *Frost*, 125 F.3d at 361.  They had nothing to do with obtaining any documents or

---

[3] During trial, the Government's theory of criminal liability on the fraud count continued to change.  It appears that the scope of the claimed fraud is that Mr. Montague made omissions to certain VA employees for the purpose of obtaining documents or information.  This, however, is inconsistent with other arguments presented by the Government, including that other VA contractors were a victim of the purportedly fraudulent scheme.  The law in this Circuit is undecided as to whether a person can be a victim of a fraud when a representation was not made to that person.  *See, e.g.*, *Frost*, 125 F.3d at 360 (discussing requirement that misrepresentation be made to the person who was defrauded).  Mr. Farmer contends that there can be no fraud in such a circumstance, but even leaving this aside, the Government presented no evidence at trial that there was any intent by Mr. Farmer or Mr. Montague to defraud another VA contractor.  Moreover, query as to whether it would even be possible for Messrs. Montague or Farmer to defraud other potential VA contractors, as the indictment alleges.  The government's argument, apparently, is that the other potential VA contractors were defrauded out of an intangible right to a "fair" bidding process, but there was no evidence presented that the bidding process was unfair, or that the other potential VA contractors had a tangible property right in a fair bidding process such that there could exist a scheme to defraud them of their property right in a fair bidding process.  Thus, the only theory of fraud that can be reasonably advanced is that there was a fraud to obtain documents and information from the VA, and the VA—to the extent that a fraud existed—was the only victim of that fraud.

-12-

information, which is demonstrated by Mr. Montague's testimony that he began to obtain documents and information from VA employees *prior* to the time that he discussed the contours of his consulting business with Ms. Szybala or Mr. Gurland.  At most, the misrepresentations were related to ensuring that the VA would continue to allow him to work as a consultant at the same time that he was employed by the VA in Dayton.  But this is not the fraud alleged against Mr. Farmer, and there is no evidence to support that he aided and abetted this fraud.

Instead, the relevant question is what misrepresentations or omissions did Mr. Montague make in order to obtain the documents or information that he allegedly provided to Mr. Farmer. As the Sixth Circuit put it, the touchstone is that the "misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property."  *Desantis*, 134 F.3d at 764. The only evidence of any misrepresentations or omissions that were designed to induce VA to part with its documents or information were Mr. Montague's failures to disclose, to the individuals from whom he obtained documents and information, the fact that he was providing this information to his clients, including Cannon Design.  The misrepresentations claimed by the government—his statements to the VA ethics officers—were wholly unrelated to inducing the VA to part with government property or information.[4]  There is no evidence or allegation that Mr. Montague received any documents or information from Mr. Gurland or Ms. Szybala. Accordingly, as noted by *Frost*, the convictions must rest only on a failure by Mr. Montague to disclose his conflict of interest to those from whom he obtained documents.  *Frost*, 125 F.3d at 361.

"When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. United States*, 445 U.S. 222, 235 (1980).  Thus, "one who fails to

---

[4] Mr. Farmer further notes that, although not ultimately decided by *Frost*, none of these supposed misrepresentations were made to the person alleged to have given the property to Mr. Montague.

disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so." *Id.* at 228; *see United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000) ("an omission can violate the fraud statute only in the context of a duty to disclose"); *United States v. Skeddle*, 940 F. Supp. 1146, 1149 (N.D. Ohio 1996) ("Because the 'scheme to defraud of property or money' counts are based on what was not said (*i.e.*, omissions), the defendants are culpable under this branch of the mail fraud statute only if the government proves the defendants had a duty to disclose their interest in the transactions.").

In *United States v. Cochran*, the Oklahoma City Airport Trust Authority (OCAT) issued $77 million in bonds, and the underwriter invested the bond proceeds. 109 F.3d 660, 662 (10th Cir. 1997).  The bond underwriter invested bond proceeds and was paid a commission by the defendant as part of the investment transaction.  *Id.* at 663.  OCAT was unaware of the commission, and the defendant contended that he had no duty to disclose the commission to OCAT. *Id.* at 663, 665.  The court held "that the government completely failed to prove the existence of a known duty on [the defendant's] part to disclose the fee."  *Id.* at 665.  The court reversed the defendant's wire fraud convictions.  *Id.* at 667.

Mr. Montague's testimony was that when he obtained documents from VA employees, he "omitted any explanation of why" he wanted them and "was not honest by means of omission." (Doc. 99, PageID 2411:24, 2423:8.)  As the *Cochran* court explained, Mr. Montague had no duty to disclose during the time that he was not a VA employee, and the Government introduced no evidence of a duty to disclose.  And even after he returned to the VA to work as the Dayton VA medical director, there is no allegation in the indictment or evidence presented at trial that Mr. Montague had a duty to disclose that he was forwarding information received from the VA to his consulting clients.  Without any evidence from which a jury could determine that Mr. Montague had a duty to disclose, and the scope of that duty, there can be no liability for fraud, even for the

-14-

counts that allege a fraud during the time that Mr. Montague was working at the Dayton VA.  As stated in *Cochran*, the government completely failed in its obligation to prove a known duty.  *Id.* at 665.  Accordingly, Mr. Farmer is entitled to a judgment of acquittal on all the fraud counts in the indictment (Counts 2-3 and 7-12).

### 2.      *The Government Did Not Prove That The Omissions Made by Mr. Montague Were "Material" For Purposes Of Mail Or Wire Fraud.*

In addition to failing to prove that Mr. Montague had a duty to disclose his conflict of interest, the Government also failed to introduce any evidence that the omissions made by Mr. Montague were "material."  The Sixth Circuit has held that "proof that a victim, *acting solely on the basis of general principles*, would have refused to contract if the defendant had disclosed his conflict does not demonstrate a mail fraud violation."  *Frost*, 125 F.3d at 361 (citing, with approval, *United States v. Mittelstaedt*, 31 F.3d 1208, 1218 (2d Cir. 1994)).  Non-disclosure does not create a liability under the mail or wire fraud statutes unless the omission can or does result in a tangible harm.  *Id.*  (quoting *Mittelstaedt*, 31 F.3d at 1217).  Put another way, the evidence at trial must have permitted a rational jury to conclude that Mr. Farmer intended to inflict a tangible injury on the VA.  *Id.*

No such evidence was admitted, and there was no evidence whatsoever that the omissions could have resulted in tangible harm to the VA; quite to the contrary, the VA selected Cannon Design from a number of competitors for the design of the West LA hospital project after a full and fair evaluation process, and the VA has used, and continues to use, the SCIP program without any loss or injury.  In fact, the evidence that was admitted showed that the VA found, after a written submission and oral interview, Cannon Design's hospital design to be the most outstanding design of all the competitors, which is why it awarded the project to Cannon Design. (Gov't Ex. 508.)

-15-

The Government's theory is that of moral conviction: had the VA known what was going on, the Government argues, the VA never would have done business with Cannon Design. Case after case, however, have held that this type of injury—an injury to principles—is insufficient to sustain a fraud conviction. *Frost*, 125 F.3d at 361 (collecting cases). There must be more, and the more is contemplation of harm to the victim. The Government failed to introduce evidence of the "more," and as such, failed in its obligation to prove that the supposed omissions were material. Therefore, judgment of acquittal must be entered for Mr. Farmer on each of the fraud counts.

### C. The Evidence Was Insufficient To Find Mr. Farmer Guilty Of Fraud.

To convict a defendant of mail fraud or wire fraud, the Government must prove "a defendant's willful participation in a scheme *with knowledge of its fraudulent elements*." *United States v. Stull*, 743 F.2d 439, 442 (6th Cir. 1984) (emphasis added); *see Windsor v. United States*, 384 F.2d 535, 536-537 (9th Cir. 1967) (a defendant's "knowing participation in a scheme to defraud . . . cannot be based on so-called 'constructive' knowledge because of facts known to others with whom [defendant] was involved in this scheme"). In this case, the testimony of the Government's own informant was that Mr. Farmer was unaware of any aspect of any supposed fraud:

- Mr. Montague testified that he did not tell Mr. Farmer that he made omissions to the VA in obtaining ethics clearance to work at the Dayton VAMC and to continue to consult. (Doc. 102, PageID 2679:10-2681:19, 2691:6-2693:4.)

- He told Mr. Farmer that he was authorized to consult for Cannon and work at the Dayton VAMC simultaneously. (*Id*. at 2681:2-19.)

-16-

- He never told Mr. Farmer that he introduced himself to others at the VA as the Dayton VA Medical Director when actually performing work on behalf of consulting clients. (*Id*. at 2599:9-13.)

- He never told Mr. Farmer about his one-year SES restrictions.  (Doc. 99, PageID 2535:14-17, 2536:8-11.)

- Mr. Montague testified that there was no fraud in obtaining the April 2010 SCIP presentations from James Sullivan.[5]  (*Id*. at 2550:20-2551:9.)

- There was no testimony that Mr. Farmer knew how or when the April 2010 SCIP presentation was obtained, and the only testimony was that Mr. Farmer received the presentation *after* they were given.  (*Id*. at 2555:3-9.)

- Mr. Montague testified that there was no fraud in obtaining the contract to perform work at VA Illiana (Danville), and that to his knowledge, the VA was satisfied with the work performed at VA Illiana.  (Doc. 102, PageID 2645:8-13; 2651:4-6.)

- Cannon Design informed the VA of Mr. Montague's participation in the work relating to VA Illiana.  (*Id*. at 2652:13-2653:9.)

- Neither Mr. Farmer nor anyone from Cannon Design ever instructed Mr. Montague to do anything illegal to obtain the contract with the VA Illiana.  (*Id*. at 2653:21-2654:3.)

- Mr. Montague testified that there was no fraud in the performance of the contract at VA Illiana.  (*Id*. at 2653:21-2654:9.)

---

[5] Notably, the jury also returned a judgment of acquittal on Count 4 of the indictment, which was related to the theft of the April 2010 SCIP presentations.  The jury's acquittal on this count is inconsistent with its guilty verdicts on Counts 2 and 3 of the indictment.

- He testified that when he first told Mr. Farmer about the upcoming project for the West LA VAMC, that his prediction for funding was based on "Bill's Rules."  (*Id*. at 2663:12-2665:15.)

- He testified that the second time he spoke to Mr. Farmer about the West LA VAMC project, he never told Mr. Farmer that the information was non-public.  (*Id*. at 2666:22-2667:4, 2667:5-7.)

- Mr. Montague's testimony was that there was no fraud at all in obtaining the information about West LA from James Sullivan.  Mr. Montague testified that he asked Mr. Sullivan which projects were to be funded, and Mr. Sullivan responded, without any reluctance. (*Id.* at 2666:10-21.)

There was never any testimony, from any witness in the case, that Mr. Farmer was aware of any alleged fraud, that he had knowledge of the fraudulent elements, and he assented to them or aided and abetted Mr. Montague in the commission of any fraud.  There is *no evidence* that Mr. Farmer *knew* Mr. Montague was going to speak with Mr. Sullivan about the West LA project or that he *knew* what Mr. Montague actually said to Mr. Sullivan.  Absent knowledge, Mr. Farmer cannot be guilty of fraud.  *See Stull*, 743 F.2d at 442; *Windsor*, 384 F.2d at 536-537.

Based on these facts, the Sixth Circuit's decision in *Frost* is instructive.  There were three students in *Frost* whose mail fraud convictions were reversed.  The one most relevant to this case is Congo, a NASA employee who initiated the procurement procedure and submitted favorable documentation in support of a contract awarded to his professors' company in exchange for substantial completion of his dissertation by an employee of the professors' company.  *Id.* at 359-360.  The court held that the prosecution could not rely on Congo's academic dishonesty to convict him "of a scheme to defraud *the government* of property." *Id.* at 360 (emphasis in original).  The court further held that Congo's failure to disclose his conflict of interest to NASA

-18-

could not be the basis for mail fraud liability because he did not "intend[] to inflict a tangible

injury upon NASA." *Id.* at 361.  In addition, the court reasoned, there was no evidence that

Congo "intended that the government would not receive in return a necessary service, performed

adequately and for a fair price."  *Id.* at 362.  The court concluded that the professors and their

company "fairly and adequately performed a necessary contract not secured through any

misrepresentations."  *Id.*

     Here, the undisputed testimony of Mr. Montague demonstrates that there was no fraud in

obtaining or performing the VA Illiana contract and there was no evidence of any material

misrepresentations by Mr. Montague related to his pre-Dayton employment.  The *Frost* case is

also instructive as to Government's allegations about the West LA project.  Even assuming that

Mr. Montague had a conflict of interest that he failed to disclose (*i.e.*, that he was seeking to be

hired by Cannon Design) when he obtained information about West LA from Mr. Sullivan, that

conflict cannot be the basis for fraud liability under *Frost*. 125 F.3d at 361 (failure to disclose

conflict of interest insufficient to sustain mail fraud conviction).

     First, and most critically, there is no evidence that Mr. Farmer intended to inflict a

tangible injury upon the VA; in fact, like in *Frost*, all the evidence demonstrates that Cannon

Design intended to provide a fair service to the VA in exchange for the contract.[6]  Second, there

is no evidence that Mr. Farmer knew whether Mr. Montague disclosed that purported conflict to

the VA.  Because Mr. Farmer himself was not the person with a purported conflict, he is even

further removed from the purported fraud than the defendant in *Frost* who was the individual

---

[6] The *Frost* case is also informative regarding the Government's argument that victims of the
fraud were the other potential contractors who bid for the West LA project.  The holding in that
case tacitly rejects that theory of liability, because there were other potential bidders for the
NASA contracts that were procured by the University of Tennessee professors.  If the Govern-
ment's theory that the other contractors could be a victim of the supposed fraud, the convictions
would have been upheld.  The Sixth Circuit, however, vacated the relevant fraud convictions.

with the conflict of interest.  Moreover, unlike *Frost* where the defendant directly advocated for the professors' company by submitting documentation to help obtain a government contract, here Mr. Montague "had no involvement in the pursuit of the West LA project by Cannon Design." (Doc. 102, PageID 2669:14-17.)

Even following Mr. Montague's return to VA Dayton, the Government presented no evidence that Mr. Farmer was aware of any fraudulent scheme that may have been concocted by Mr. Montague, and therefore there is no evidence sufficient to support a finding that Mr. Farmer entered into a conspiracy to defraud or aided and abetted any claimed fraud.  Thus, he cannot be guilty of mail or wire fraud, and the Court must enter judgment of acquittal on the fraud counts charged by the Government.

## III.   THE GOVERNMENT PRESENTED INSUFFICIENT EVIDENCE THAT MR. FARMER AIDED AND ABETTED MR. MONTAGUE'S THEFT OF GOVERNMENT PROPERTY.

The indictment alleges that Mr. Farmer aided and abetted Mr. Montague's violation of 18 U.S.C. § 641, *i.e.*, that Mr. Montague "knowingly received, concealed and retained, with the intent to convert it to his use and gain" a record and thing of value of the United States "knowing the record and thing of value to have been embezzled, stolen, purloined and knowingly converted to the use of another without authority." (Doc. 1, ¶¶ 63 (Count 4), 86 (Counts 19-21), 88 (Counts 22-23).)  The jury found Mr. Farmer guilty on Counts 19-22 but not guilty on Counts 4 and 23. Mr. Farmer is entitled to judgment of acquittal on Counts 19-22 because intangible information cannot be stolen or converted under Section 641.  Moreover, there was no evidence presented at trial demonstrating that the Government suffered an actual property loss or that Mr. Farmer intended to deprive the Government of the use and benefit of any property or information.

-20-

### A.    Mr. Farmer Cannot Be Guilty Of Violating 18 U.S.C. § 641 Because, As A Matter Of Law, Intangible Information Cannot Be Stolen Or Converted.

The Government's theory of prosecution for theft of government property rests on the assumption that intangible information constitutes a "thing of value" under the statute, *i.e.*, that Mr. Farmer received information which cost the Government more than $1,000 (the statutory threshold for liability under Section 641) to create and produce.  However, the statute is "generally inapplicable" to information and other intangible property.  *See United States v. Tobias*, 836 F.2d 449 (9th Cir. 1988) (construing Section 641 as inapplicable to classified information); *United States v. Truong Dinh Hung*, 629 F.2d 908, 926 & n. 21 (4th Cir. 1980) (same) (Winter, J. concurring); *Chappell v. United States*, 270 F.2d 274, 278 (9th Cir. 1959) (Section 641 should not be read to apply to intangible goods and services).  Section 641 proscribes the conversion of "any record, voucher, money, or thing of value."  The *ejusdem generis* canon of statutory construction provides that general words shall be construed as applicable only to things of the same general nature or kind as those enumerated. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2171 n. 19 (2012); *Gooch v. United States*, 297 U.S. 124, 128 (1936); *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co.*, 691 F.3d 821, 833 (6th Cir. 2012).  Thus, the phrase "thing of value" must be given a meaning of the same nature or kind as the terms "record," "voucher" and "money," all of which are tangible items.  Accordingly, to the extent the guilty verdicts are based on the value of intangible information that Mr. Farmer received from Mr. Montague, the verdicts cannot stand as a matter of law.

Concededly, Sixth Circuit case law superficially supports the Government's position.  However, a careful reading demonstrates that those cases do not necessitate the result sought by the Government.  In *United States v. Jeter*, the defendant was convicted for the theft "of imprinted carbon sheets used in the typing of secret grand jury documents and proceedings." 775

-21-

F.2d 670, 672 (6th Cir. 1985).  Although the government's theory was "that the secret grand jury *information* in the carbon discard paper constituted a 'thing of value' in excess of $100,"[7] the court's holding was based on testimony that "[t]he cost of all received transcripts and originals" was $350.  *Id.* at 680.  In other words, the court based its holding on the value of *tangible* items (imprinted carbon sheets); the reference to *information* was dicta.

The Sixth Circuit's decision in *United States v. Barger* is similarly distinguishable. There, the defendant was convicted of a *misdemeanor* for "knowingly converting a copy of the official law enforcement intelligence manual regarding the identities and personal data on members and associates of the Outlaws Motorcycle Club."  931 F.2d 359, 361 (6th Cir. 1991). This means that despite evidence in the record that "it took hundreds of hours and approximately $21,000 to produce the original," the jury, which also heard evidence that each copy of the manual "costs more than $20," found that the manual was worth no more than $100.  *Id.* at 368. In other words, the court upheld the conviction based on the cost of the tangible item (the manual itself), *not* the information contained therein.

Thus, upon closer inspection, any statements in *Jeter* or *Barger* seeming to support the Government's position were dicta, "unnecessary to the disposition of [either] case." *Blount-Hill v. Bd. of Educ.*, 195 Fed. App'x 482, 488 (6th Cir. 2006).  Accordingly, Sixth Circuit jurisprudence is not necessarily incompatible with the Ninth Circuit's view that Section 641 does not apply to intangible information.  Furthermore, in light of the decisions on this issue from other courts, Mr. Farmer's interpretation of the ambiguous statutory phrase "thing of value" is reasonable.  At minimum, therefore, the court should follow the rule of lenity and reject the Government's harsher and more expansive view of this criminal statute.  *See Brock*, 501 F.3d at

---

[7] Until Section 641 was amended in 1996, and therefore at the time that both *Jeter* and *Barger* were decided, $100 was the statutory threshold.  The current threshold is $1,000, as it has been since that 1996 amendment.

768 (quoting *Scheidler*, 537 U.S. at 409) ("'When there are two rational readings of a criminal statute, one harsher than the other,' the rule of lenity tells us that 'we are to choose the harsher only when Congress has spoken in clear and definite language.'").

In sum, a proper reading of Section 641 is that the statute was not meant to apply to intangible information, and this Court should not extend the criminal statute's reach in the face of a less harsh, reasonable alternative interpretation, which, as we explain below, exists here.

### B.     The Government Failed To Present Evidence Demonstrating That Mr. Farmer Intended To Deprive The Government Of The Use Or Benefit Of Any Documents Or Information.

A person violates 18 U.S.C. § 641 if he "receives, conceals, or retains [any record, voucher, money, or thing of value of the United States] with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted."  Conversion "requires more than knowledge that defendant was taking the property into his possession."  *Morissette v. United States*, 342 U.S. 246, 270-271 (1952).  The Government must also prove that the defendant had "the criminal intent to steal or knowingly convert, that is, *wrongfully* to deprive another of possession of property."  *Id.* at 275-276 (emphasis in original); *United States v. Stephens-Miller*, 582 Fed. App'x 626, 638 (6th Cir. 2014) (government must prove defendant converted money knowing it "was not hers and with intent to deprive the owner of the use of the money"); *United States v. Hurt*, 527 F.3d 1347, 1350 (D.C. Cir. 2008) (government must prove defendant took property "property knowing it belongs to another with an intent permanently to deprive the owner of possession").  The Court properly instructed the jury that conversion requires "intent to deprive the owner of its use or benefit either temporarily or permanently."

Here, the Government presented no evidence whatsoever demonstrating that the Government was deprived of the use or benefit of the documents and information Mr. Farmer received from Mr. Montague.  For example, Mr. Montague obtained a SCIP Power Point

presentation from Mr. Sullivan in 2010 before the presentation was given, but Mr. Sullivan was still able to give that very same presentation several weeks later.  (Doc. 99, PageID 2554:2-2555:6.)  Likewise, with respect to other documents received by Mr. Farmer, there was no evidence that the VA was unable to use the SCIP process or unable to perform a budget analysis for the purpose of submitting a proposed project ranking to the President.  Despite Mr. Sullivan and others having voluntarily given the documents and information to Mr. Montague, the Government was not deprived of the use or benefit of the documents and information.  Even if Mr. Farmer intended to possess the documents as alleged, there is no evidence that he sought to deprive the Government of their benefit or use.  Without such intent, there can be no theft or conversion.  Because the Government was never deprived of the use or benefit of any property, Mr. Farmer is entitled to judgment of acquittal.

### C.     The Government Failed To Present Evidence Demonstrating That It Suffered An Actual Property Loss.

The Sixth Circuit has held that "it is an essential element . . . that the Government have suffered an actual property loss." *United States v. Klingler*, 61 F.3d 1234, 1240 (6th Cir. 1995) (district court erred in denying motion to dismiss indictment under Section 641, because stolen funds never became property of the government); *accord United States v. Caseslorente*, 220 F.3d 727, 732 n.5 (6th Cir. 2000) (government's actual property loss is essential element of Section 641 case); *United States v. Collins*, 464 F.2d 1163, 1165 (9th Cir. 1972) (same).  The Government cannot have suffered any actual property loss if it lacks a valid property interest in the allegedly stolen or converted information.  Indeed, "federal *ownership* of stolen property is a jurisdictional imperative." *Klingler*, 61 F.3d at 1240 (emphasis in original).

Here, the Government presented no evidence that it holds a valid property interest in the information embodied in the VA's SCIP plan or any similar associated information (*e.g.,* priority

scores).  That the Government lacks a protectable property interest in such intangible information is confirmed by the fact that Congress has expressly rejected the proposition that government works can receive copyright protection.  *See* 17 U.S.C. § 105 ("Copyright protection under this title is not available for any work of the United States Government.").  This signals that Congress did not intend "for the government to 'own' information the same way a private actor does." Jessica Lutkenhaus, Note, *Prosecuting Leakers the Easy Way: 18 U.S.C. § 641*, 114 COLUM. L. REV. 1167, 1182-83 (2014) (hereafter "Lutkenhaus").

In addition, where Congress intended to criminalize disclosure of information, it has done so.  *See, e.g.,* 18 U.S.C. § 793(e) (prohibiting communication of national defense information to anyone not entitled to receive it). If Congress meant Section 641 to cover information, there would have been no need to enact statutes relating to specific types of information because disclosure of that information could be prosecuted as theft of government property under Section 641.  If Congress had intended that Section 641 reach all information, or intended that it extend governmental property rights over all information, then the later-enacted penalties for disclosing classified information would have been redundant.  Lutkenhaus, 114 COLUM. L. REV. at 1176-77.

Likewise, Section 641's predecessor statutes date back to 1875, and the statutory prohibition has not been substantively changed.  *See Truong Dinh Hung*, 629 F.2d at 923 (Winter, J., concurring) (discussing legislative history of Section 641).  That statutory history does not reflect any Congressional intent to reach all information or give the Government property rights in all information.  *See* Michael E. Tigar, *The Right of Property and the Law of Theft*, 62 TEX. L. REV. 1443, 1463 (1984) (legislative history of Section 641, part of United

-25-

States Code since 1875 in much the same form as today, "gives no hint that Congress intended it to apply to theft of government information.") (hereafter, "Tigar").[8]

Lacking a valid property interest in the information embodied in the documents and information alleged to have been converted, it follows as a matter of law that the Government suffered no actual property loss and therefore cannot prove that Mr. Farmer is guilty beyond a reasonable doubt under Section 641.  Moreover, the Government was not deprived of the use or benefit of any of the documents or information Mr. Farmer received from Mr. Montague.  Thus, it could not have suffered any actual property loss.

## IV.  THE EVIDENCE IS INSUFFICIENT TO PROVE THAT MR. FARMER JOINED ANY CONSPIRACY TO VIOLATE THE LAW.

"To prove conspiracy, the government must establish: (1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007).  The government must demonstrate that the "defendant knew the object of the conspiracy and voluntarily associated himself with it to further its objectives."  *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000) (quotation marks and citation omitted).  Here, the Government has failed to present substantial evidence satisfying these elements.

First, and most critically, the substantive counts against Mr. Farmer each fail as a matter of law, and thus, even if Mr. Farmer had agreed to the schemes alleged by the Government, the schemes are not unlawful and, therefore, Mr. Farmer cannot be guilty of a conspiracy.  But moreover, Mr. Farmer could not have joined a conspiracy to violate the law because Mr.

---

[8]     Indeed, the proposition that section 641 must be read to encompass the taking of all information would extend its reach to the ridiculous – including "[a]ny nonpublic information, from war plans to White House wallpaper sketches . . ."  Tigar at 1468.

-26-

Montague never told Mr. Farmer that he was doing anything illegal.  In fact, the record demonstrates that to the extent Mr. Montague lied to the VA about the scope of his consulting activities, he lied to Mr. Farmer about them as well.  (Doc. 102, PageID 2679:10-21.)  Mr. Montague told Mr. Farmer about his limitations upon returning to Dayton and tried to comply with them.  Moreover, Mr. Farmer was not present when Mr. Montague went to the VA offices in Washington or when he communicated with VA employees; indeed, Mr. Farmer was not even aware of when Mr. Montague was traveling to Washington, D.C. in advance of his doing so.  And Mr. Farmer did not communicate with VA officials or employees himself.  Thus, the evidence is not sufficient for a rational jury to find beyond a reasonable doubt that Mr. Farmer knew Mr. Montague intended to defraud anyone or obtain non-public information.  The Court should enter judgment of acquittal on Count 1 in its entirety.

## V.  IN THE ALTERNATIVE, MR. FARMER IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Even if the court finds that the evidence presented at trial was sufficient for a rational jury to have found Mr. Farmer guilty beyond a reasonable doubt, the court should grant a new trial because the verdict is against the manifest weight of the evidence.  *See Hughes*, 505 F.3d at 592 (a motion for a new trial "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence").  Under Rule 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  The court's standard of review on a Rule 33 motion is broader than the standard of review on a Rule 29 motion.  *See United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998) ("A reversal based on the verdict being against the manifest weight of the evidence is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence.").  "A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for

new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Hughes*, 505 F.3d at 593.

For all the reasons discussed above regarding the insufficiency of the evidence, the jury's guilty verdicts against Mr. Farmer are against the manifest weight of the evidence.  Indeed, considering the broader standard of review and the Court's ability to weigh the evidence in determining whether to grant a motion for a new trial, the sufficiency arguments above apply with even greater force.  Mr. Farmer was unaware of any of Mr. Montague's purported fraudulent representations, and therefore he cannot be guilty of wire or mail fraud.  Moreover, because Mr. Montague kept Mr. Farmer uninformed about the extent of his activities, Mr. Farmer cannot be guilty of conspiring with Mr. Montague to perform those activities.  In addition, Mr. Montague never told Mr. Farmer he was providing non-public information, and Mr. Farmer relied on Mr. Montague not to provide such information.  And finally, Mr. Montague told Mr. Farmer that he was permitted to continue consulting for Cannon Design after he returned to employment at the Dayton VA Medical Center.  Thus, for these reasons and those stated in this motion, the jury's verdicts are against the manifest weight of the evidence.

Accordingly, the interests of justice require a new trial for Mr. Farmer if the Court does not enter judgment of acquittal.

## CONCLUSION

Because the Government has failed to present sufficient evidence upon which a rational jury could rely in finding all the elements of the charged crimes beyond a reasonable doubt, Mr. Farmer is entitled to a judgment of acquittal under Rule 29.  Alternatively, Mr. Farmer is entitled to a new trial pursuant to Rule 33 because the jury's verdicts are against the manifest weight of the evidence.  To the extent that the Court wishes to hear argument on any of the issues raised herein, Mr. Farmer will be ready to appear.

-28-

Respectfully submitted,

Dated: September 2, 2015

/s/ John R. Mitchell
John R. Mitchell
john.mitchell@thompsonhine.com
Matthew D. Ridings
matt.ridings@thompsonhine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: 216.566.5500
Fax: 216.566.5800

*Attorneys for Defendant Mark S. Farmer*

-29-

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was served through the Court's electronic filing system this 2nd

day of September, 2015, upon the following:

    Antoinette T. Bacon, Esq.
    Paul Flannery, Esq.
    United States Attorney's Office for the Northern District of Ohio
    801 West Superior Avenue
    Cleveland, Ohio 44113

             /s/ John R. Mitchell
             *One of the Attorneys for*
             *Defendant Mark S. Farmer*

11908931.11